## IN THE U.S. DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| _____ | ) | 3:09-md-02100-DRH-PMF |
| | ) | |
| IN RE YASMIN AND YAZ | ) | MDL No. 2100 |
| (DROSPIRENONE) MARKETING, | ) | |
| SALES PRACTICES AND | ) | JUDGE DAVID R. HERNDON |
| RELEVANT LIABILITY | ) | |
| LITIGATION | ) | **COMPLAINT WITH JURY DEMAND** |
| _____ | ) | **ENDORSED HEREON** |
| | ) | |
| **SAMANTHA MACKENZIE** | ) | |
| | ) | Civil Action No.:  3:11-cv-12204-DRH -PMF |
| | ) | |
| Plaintiff, | ) | |
| | ) | David W. Zoll  (0008548) |
| vs. | ) | Michelle L. Kranz (0062479) |
| | ) | Pamela A. Borgess  (0072789) |
| **BAYER CORPORATION, BAYER** | ) | ZOLL, KRANZ & BORGESS, LLC |
| **HEALTHCARE LLC, BAYER** | ) | 6620 W. Central Ave., Suite 200 |
| **PHARMACEUTICALS** | ) | Toledo, OH  43617 |
| **CORPORATION, BAYER** | ) | Tel. (419) 841-9623 |
| **HEALTHCARE** | ) | Fax: (419) 841-9719 |
| **PHARMACEUTICALS INC.,** | ) | Email: david@toledolaw.com |
| **BAYER PHARMA AG, JOHN** | ) |         michelle@toledolaw.com |
| **DOE MANUFACTURERS A-Z** | ) |         pamela@toledolaw.com |
| **[Real Names and Addresses** | ) | |
| **Unknown], JOHN DOE** | ) | _Counsel for Plaintiff_ |
| **DISTRIBUTORS A-Z** | ) | |
| **[Real Names and Addresses** | ) | |
| **Unknown]** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now comes Plaintiff, by and through the undersigned counsel, and for her Complaint hereby avers and states as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff Samantha MacKenzie for damages associated with her ingestion of the pharmaceutical drug Yaz, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.      As a result of the ingestion of Yaz, Plaintiff Samantha MacKenzie suffered injuries to her person including, but not limited to, Gastrointestinal complications and blood clots in her veins near her liver in approximately July 2008.

## THE PARTIES

3.      Plaintiff Samantha MacKenzie, (herein "Plaintiff"), currently resides at 648 Larchmont Court, Westland, Wayne County, Michigan 48185.

4.      Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5.      Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

6.      Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

7.      Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

8.      As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

9.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

10.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

11.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for Yaz.

12.     Defendant BAYER PHARMA AG, formerly known as Bayer Schering Pharma AG and Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

13.     Defendant BAYER PHARMA AG is a corporate successor to Schering AG.

14.     Schering AG was renamed BAYER PHARMA AG effective December 29, 2006.

15.     Defendant BAYER PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

16.     Defendant BAYER PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, Yaz.

17.     Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing,

3

and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yaz into interstate commerce and derived substantial revenue from these activities.

18.      Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yaz into interstate commerce and derived substantial revenue from these activities.

19.      Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Pharma AG, John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

20.      At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yaz.

21.      At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

22.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

24.     Filing of this action in the United States District Court for the Southern District of Illinois is proper, as it relates to the consolidated multi-district litigation "In Re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation," MDL Docket No. 2100, pending in this Court.

25.     Venue on remand is proper in the United States District Court for The Eastern District of Michigan, Detroit Division, pursuant to 28 U.S.C.A. §1391 because a substantial part of the events giving rise to this claim occurred in that district and Defendants conduct business, reside and are otherwise subject to personal jurisdiction there.

## FACTS

### Yasmin and YAZ Background

26.     Yasmin, (a predecessor to Yaz), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Berlex Laboratories, Inc. and/or Berlex, Inc containing the hormones estrogen and progestin.

27.     The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

28.     Combination birth control pills are referred to as combined hormonal oral contraceptives.

29.     Yasmin was approved by the FDA in April, 2001.

30.     In 2006, Bayer acquired Berlex Laboratories, Inc. and/or Berlex, Inc, and began marketing an almost identical drug, Yaz (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

31.     The difference between Yaz/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

32.     Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

33.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

34.     During the 1990s, new "third generation" progestins were developed.  Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

35.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

36.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name, Ocella.

37.     Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

38.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

39.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia.  If left untreated, hyperkalemia can be fatal.

40.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form, including deep vein thrombosis ("DVT").  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

41.     Another effect is a substantially increased risk of gallbladder complications.

42.     During the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

43.     The FDA's adverse event data indicate staggering, serious adverse events that have been associated with Yasmin and YAZ including but not limited to heart arrhythmias, electrolyte imbalance, hyponatremia, hyperkalemia, hyperkalemic arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, strokes, transient ischemic attacks, blood clot formation, gall bladder and kidney disease and/or sudden death.

44.      In fact, from the first quarter of 2004 through the third quarter of 2008, the FDA received reports for more than 50 deaths where the decedents were users of Yasmin and YAZ. Because of underreporting, the actual number of people who suffered side effects associated with these medications is actually 10 to 100 times more than reported.

45.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child-bearing years.

46.     Some of the deaths reported occurred in women as young as 17 years old.

47.     Reports of elevated potassium levels are frequently included among the causes of death of women who died while using Yasmin and YAZ.

48.     Two recent studies, released in August 2009, found significantly increased risks of harm associated with Yasmin or YAZ over other types of birth control pills.  The first study assessed the risk of developing venous thrombosis in women who use oral contraception. The women ranged in age from 15 to 49 and had no history of heart disease or any malignant condition.  The study found that of the 3.3 million women taking oral contraceptives, there were 4,213 venous thrombotic events.   Of this total, 2,045 occurred in women using drosperinone oral contraceptives.  The study concluded that "oral contraceptives with . . . drosperinone were associated with a significantly higher risk of venous thrombosis than oral contraceptives with levonogesterel."  Lidegard, et al., *Hormonal Contraception and Risk of Venous*

*Thromboembolism: National Follow Up Study*, THE BRITISH MEDICAL JOURNAL 2009, 330:B2921.

49.    The second study found that Yasmin or YAZ users have twice the risk of a clotting event than users of birth control pills that contain levonorgestral. Vandenbroucke, et al, *The Venous Thrombotic Risk of Oral Contraceptives, Effects of Estrogen Dose and Progestin Type: Results of the MEGA Case-Control Study*, THE BRITISH MEDICAL JOURNAL 2009, 339:B2921.

50.    Despite the wealth of scientific evidence, Defendants have not only ignored the increased risk of the development of the aforementioned injuries associated with the use of Yasmin and YAZ, but they have, through their marketing and advertising campaigns, urged women to use Yasmin and YAZ instead of birth control pills that present a safer alternative.

### Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and Yaz

51.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

52.    However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

53.    Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of Yaz and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

54.    Indeed, the FDA felt Defendants' over-promotion of Yaz was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements.

55.    Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

56.     Defendants ignored the correlation between the use of Yasmin and Yaz and increased thrombosis formation despite the wealth of scientific information available.

57.     Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and Yaz and increased risk of clots and still promoted, sold, advertised, and marketed the use of Yasmin and Yaz.

58.     Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and Yaz had been tested and was found to be safe and/or effective for its indicated use.

59.     These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yaz for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff Samantha MacKenzie.

60.     Defendants knew and were aware or should have been aware that Yasmin and Yaz had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate and/or sufficient warnings.

61.     Defendants knew or should have known that Yasmin and Yaz had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

62.     In representations to Plaintiff Samantha MacKenzie, her healthcare providers, the public and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

  a.     That Yaz is not as safe as other available contraceptives;

  b.     That the risks of adverse events with Yaz (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

  c.     That the risks of adverse events with Yaz was not adequately tested and/or known by Defendants;

  d.     Plaintiff Samantha MacKenzie was put at risk of experiencing serious and dangerous side effects including, but not limited to, gastrointestinal complications and the occurrence thrombotic events, as well as other severe and personal injuries, physical pain, and mental anguish;

  e.      That patients needed to be monitored more regularly than normal while using Yaz; and/or

  f.      That Yaz was designed, tested, manufactured, marketed, produced, distributed, and advertised negligently, defectively, fraudulently and improperly.

63.      Defendants were under a duty to disclose to Plaintiff Samantha MacKenzie and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yaz.

64.     Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yaz, including Plaintiff Samantha MacKenzie.

65.     Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yaz with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff Samantha MacKenzie, would rely on such in selecting Yaz as a contraceptive.

66.     Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yaz in their labeling, advertising, product inserts, promotional material or other marketing efforts.

67.     The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

68.     Defendants knew that Plaintiff Samantha MacKenzie, her healthcare providers, the public, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yaz, as set forth herein.

69.     The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.   Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yaz.

70.     Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff Samantha MacKenzie, about the potential risks and serious side effects associated with the use of Yaz in a timely manner, yet they failed to provide such warning.

**FACTS REGARDING PLAINTIFF SAMANTHA MACKENZIE**

71.     Plaintiff Samantha MacKenzie was first prescribed Yaz, by her health care provider approximately in September 2007. Plaintiff Samantha MacKenzie was not told that this oral contraceptive presented any dangers that were greater than the dangers presented by the Pill.

72.     As a result of using Defendants' product, Plaintiff Samantha MacKenzie suffered severe and personal injuries, including, but not limited to, gastrointestinal complications and venous

blood clots in approximately July 2009, as well as physical pain and mental anguish, diminished enjoyment of life, and medical, health, incidental and related expenses.

73.     Prior to using Defendants' product, Plaintiff Samantha MacKenzie was in good health and was able to perform all of the usual and customary activities and activities of daily living for a healthy young woman.

74.     Prior to Plaintiff Samantha MacKenzie's use of Defendants' product, Defendants knew or should have known that use of Yaz created a higher risk of the occurrence of thrombotic events and other adverse events than other oral contraceptives on the market, including, but not limited to, second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

75.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz, Defendants failed to warn Plaintiff Samantha MacKenzie and/or her health care providers and fraudulently concealed said serious risks before she used the product.

76.     Had Plaintiff Samantha MacKenzie and/or her heath care providers known the risks and dangers associated with Yaz, she would not have used Defendants' product and would not have suffered injuries described above.

77.     Defendants' superior knowledge of facts necessary to make out a cause of action as well as the fraudulent concealment and/or misrepresentation of those facts, prevents the statute of limitations from being asserted as a defense, as only Defendants knew the true dangers associated with the use of Yaz as described herein.  Defendants did not disclose this information to the Plaintiff Samantha MacKenzie, her prescribing doctor, the Healthcare community and the general public.

78.     Thus, Plaintiff Samantha MacKenzie did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendant giving rise to a cause of action, until at least the fall of 2010.

### CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

79.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

80.     Prior to Plaintiff Samantha MacKenzie's use of Yaz and during the period in which Plaintiff Samantha MacKenzie actually used Yaz, Defendants fraudulently suppressed material information regarding the safety and efficacy of Yaz, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique stroke dangers. Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient. As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff Samantha MacKenzie believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of Yaz strong.

81.     Defendants fraudulently concealed safety issues with Yaz in order to induce physicians to prescribe and patients, including Plaintiff Samantha MacKenzie, to purchase and use Yaz.

82.     At the time Defendants concealed the fact that Yaz was not safe, Defendants were under a duty to communicate this information to physicians, the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using Yaz.

14

83.    Plaintiff Samantha MacKenzie and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of Yaz.

84.    As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff Samantha MacKenzie and Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff Samantha MacKenzie's injuries.

85.    It is unconscionable and outrageous that Defendants would risk the lives of consumers. Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct rises to the level necessary that Plaintiff Samantha MacKenzie should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

86.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of Yaz as described herein. Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.

## COUNT II
## STRICT LIABILITY

87.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

88.    At the time of Plaintiff Samantha MacKenzie's injury, Defendants' pharmaceutical, Yaz was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff Samantha MacKenzie.

89.     The Yaz used by Plaintiff Samantha MacKenzie was in the same or substantially similar condition as it was when it left the possession of Defendants.

90.     Plaintiff Samantha MacKenzie did not misuse or materially alter the Yaz.

91.     Defendants are strictly liable for Plaintiff Samantha MacKenzie's injury in the following ways:

   a.   The pharmaceutical Yaz was designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

   b.   Defendants failed to properly market, design, manufacture, distribute, supply and sell Yaz;

   c.   Defendants failed to warn and/or place adequate warnings and instructions on Yaz;

   d.   Defendants failed to adequately test Yaz;

   e.   Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of Yaz; and

   f.   A feasible alternative design existed that was capable of preventing Plaintiff Samantha MacKenzie's injury.

92.     Defendants' actions and omissions were the direct and proximate cause of Plaintiff Samantha MacKenzie's injury.

93.     Defendants' conduct, as described above, was extreme and outrageous.    Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

94.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

95.    At the time Defendants marketed, distributed and sold Yaz to Plaintiff Samantha MacKenzie, Defendants warranted that Yaz was merchantable and fit for the ordinary purposes for which it was intended.

96.    Members of the consuming public, including consumers such as Plaintiff Samantha MacKenzie, were intended third party beneficiaries of the warranty.

97.    Yaz was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

98.    Plaintiff Samantha MacKenzie reasonably relied on Defendants' representations that Yaz was safe and free of defects and was a safe means of birth control.

99.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff Samantha MacKenzie's injury.

100.    Defendants' conduct, as described above, was extreme and outrageous.    Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

101.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

17

102.    Defendants sold Yaz with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

103.    Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

104.    Yaz was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

105.    Plaintiff Samantha MacKenzie reasonably relied on Defendants' representations that Yaz was safe and effective for use as a birth control method.

106.    Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff Samantha MacKenzie's injury.

107.    Defendants' conduct, as described above, was extreme and outrageous.    Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT V
## NEGLIGENT FAILURE TO WARN

108.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

109.    Before Plaintiff Samantha MacKenzie used Yaz, and during the period in which she used it, Defendants knew or had reason to know that Yaz was dangerous and created an unreasonable risk of bodily harm to consumers.

110.    Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made Yaz likely to be dangerous.

111.    Despite the fact that  Defendants knew or had reason to know that Yaz was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made Yaz likely to be dangerous.

112.    The Plaintiff Samantha MacKenzie's injury was a direct and proximate result of Defendants' failure to warn of the dangers of Yaz.

113.    Defendants' conduct, as described above, was extreme and outrageous.   Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT VI
## NEGLIGENCE

114.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

115.    Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of Yaz, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

116.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of Yaz in that Defendants' knew or should have known that the drug created a high risk of unreasonable harm.

117.    Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of Yaz in that, among other things, they:

19

a.  Failed to use due care in designing and manufacturing Yaz so as to avoid the aforementioned risks to individuals;

b.  Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects.  The warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

c.  Failed to provide adequate training and instruction to medical care providers for appropriate use of Yaz;

d.  Placed an unsafe product into the stream of commerce; and

e.  Were otherwise careless or negligent.

118.  Despite the fact that Defendants knew or should have known that Yaz caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market Yaz to consumers, including the medical community and Plaintiff.

119.  Defendants' conduct, as described above, was extreme and outrageous.  Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

120.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

121.  Prior to Plaintiff Samantha MacKenzie first using Yaz and during the period in which she used Yaz, Defendants misrepresented that Yaz was a safe and effective means of birth control.

Defendants also failed to disclose material facts regarding the safety and efficacy of Yaz, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

122.    Defendants had a duty to provide Plaintiff Samantha MacKenzie, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

123.    Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with Yaz, that their representations regarding Yaz were false, and that they had a duty to disclose the dangers of Yaz.

124.    Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff Samantha MacKenzie, to act in reliance by purchasing Yaz.

125.    Plaintiff Samantha MacKenzie justifiably relied on Defendants' representations and nondisclosures by purchasing and using Yaz.

126.    Defendants' misrepresentations and omissions regarding the safety and efficacy of Yaz was the direct and proximate cause of Plaintiff Samantha MacKenzie's injuries.

127.    Defendants' conduct, as described above, was extreme and outrageous.    Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY

128.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

129.    Defendants expressly warranted that Yaz was safe and effective to members of the consuming public, including Plaintiff Samantha MacKenzie.

130.    Members of the consuming public, including consumers such as Plaintiff Samantha MacKenzie, were intended third party beneficiaries of the warranty.

131.    Defendants marketed, promoted and sold Yaz as a safe method of birth control.

132.    Yaz does not conform to these express representations because Yaz is not safe and has serious side effects, including death.

133.    Defendants breached their express warranty in one or more of the following ways:

      a.      Yaz, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

      b.      Defendants failed to warn and/or place adequate warnings and instructions on Yaz;

      c.      Defendants failed to adequately test Yaz; and

      d.      Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from Yaz.

134.    Plaintiff Samantha MacKenzie reasonably relied upon Defendants' warranty that Yaz was safe and effective when she purchased and used the medication.

135.    Plaintiff Samantha MacKenzie's injuries were the direct and proximate result of Defendants' breach of their express warranty.

136.    Defendants' conduct, as described above, was extreme and outrageous.   Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge

of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

**COUNT IX**
**FRAUDULENT MISREPRESENTATION**

137.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

138.    Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yaz, owed a duty not to deceive the Plaintiff Samantha MacKenzie, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

139.    The duty not to deceive is distinct from than the duty to warn.

140.    Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

141.    At the time of Defendants' fraudulent misrepresentations, Plaintiff Samantha MacKenzie was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

142.    Defendants breached their duties to Plaintiff Samantha MacKenzie by providing false, incomplete and misleading information regarding Yaz.

143.    Defendants acted with deliberate intent to deceive and mislead Plaintiff Samantha MacKenzie, her medical providers, and the public.

23

144.    Plaintiff Samantha MacKenzie reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

145.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff Samantha MacKenzie suffered the harm described herein.

146.    Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS X-XI
## CIVIL CONSPIRACY AND COMMERCIAL BRIBERY

147.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

148.    Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drugs Yaz, and to convince their patients and others of the safety and effectiveness of Yaz.

## COUNT XII
## PUNITIVE DAMAGES

149.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

150.    Defendants engaged in fraudulent and malicious conduct towards the Plaintiff Samantha MacKenzie, her medical providers and the public, and thereby acted with willful and wanton

and/or conscious and reckless disregard for the safety of Plaintiff and the public, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.    For an award of compensatory damages, including damages against Defendants and each of them for personal injuries, pain and suffering, disability, medical and hospital expenses, loss of income, and other damages according to proof at trial in excess of $75,000;

B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.    For reasonable attorneys' fees and costs;

D.    For pre-judgment interest; and

E.    For such further and other relief the court deems just, equitable, and proper.

Dated: July 5, 2011.                            Respectfully Submitted,

 /s/Michelle L. Kranz
Michelle L. Kranz (0062479)
David W. Zoll (0008548)
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com
        michelle@toledolaw.com
        pamela@toledolaw.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.


  /s/Michelle L. Kranz
Michelle L. Kranz